*918 OPINION OF THE COURT
Janice A. Taylor, J.
The defendant herein, American Airlines (hereinafter referred to as American), moves for summary judgment since the plaintiff herein, Belgian Endive Marketing Board, Inc. (hereinafter referred to as Belgian), failed to commence the instant action within the two-year Statute of Limitations set forth in the Convention for Unification of Certain Rules Relating to International Transportation by Air (49 US Stat 3000, TS No. 876, reprinted in 49 USCA former § 1502, now § 40105 [hereinafter referred to as the Warsaw Convention or the Convention]). Belgian cross-moves for partial summary judgment dismissing American’s second through seventh affirmative defenses which arise under the applicable provisions of the Convention and further maintains that the action was timely commenced within the purview of the requisite Statute of Limitations under New York law. After careful review and due deliberation, based on the papers duly submitted before this court, the relevant case law and treaty provisions thereunder the court finds as hereinafter set forth.
BACKGROUND
It is undisputed that on or about June 18, 1993, Belgian and American agreed that the defendant would ship Brava Endive Brand produce (hereinafter referred to as produce) on behalf of plaintiff as consignee. Air waybill No. 25421293 evinces the agreement between the parties and specifies that the goods should be stored in a cool room. The goods were to be shipped on flight AA99 on June 19, 1993, on a direct flight from Brussels to New York’s John F. Kennedy International Airport (hereinafter referred to as JFK). The produce was to be packed onto P6 pallets to avoid crushing or shifting of the perishables and to permit efficient loading when Brennan Trucking (hereinafter referred to as Brennan), the designated trucker, arrived at JFK. Notwithstanding the explicit aforementioned terms, the produce arrived in New York on flight AA101 via London two days later on June 21, 1993. The defendant failed to notify the plaintiff to obtain approval for the change in flight itinerary. Moreover, the plaintiff was never afforded the opportunity to make alternate arrangements for shipments or to restructure the air waybill to reflect the increased risk of loss occasioned by the rerouting delays. The danger of spoilage was magnified by the additional layover in London, the delay and the perishable nature of the produce. The defendant fur *919 ther failed to comply with the loading specifications and restacked the produce on four LD4 and two LD3 pallets which resulted in a shifting of the load and overstacked cartons thereby making efficient loading of the truck impossible. The carrier’s certificate dated June 21, 1993, denotes that Brennan was authorized to collect the merchandise. It is additionally uncontroverted that Brennan’s employee refused to accept the shipment on that date because it was not in proper order and could not fit onto one load.
Of paramount importance is American’s failure to store the produce in a cool area. On June 22, 1993, after American’s attempted surrender of custody of the goods to Brennan, a United States Department of Agriculture (hereinafter referred to as USD A) inspection of the shipment took place at American’s storage facility. The inspection certificate revealed that the temperature of the produce was 73-78 degrees Fahrenheit, well below the prescribed temperature of 82 degrees Fahrenheit. It also describes several defects specifically, but not limited to, "brown discoloration affecting leaf margins”; moreover it alleges that some pallets had too many cartons with "sides tops and bottoms crushed,” many cartons shifted approximately l1/ 2 to 21/ 2 inches and the goods were stored "between loading doors.” On said date of June 22, 1993 Brennan returned with a USD A inspector and collected the produce which was in good condition. Belgian was only able to salvage approximately $3,600 out of a $19,000 shipment. The plaintiff subsequently served a summons and complaint on the defendant on or about August 12, 1995, some two years and two months later.
DISCUSSION
The threshold issue before this court is whether the two-year Statute of Limitations prescribed by the Warsaw Convention or that of New York law applies to the case at bar. It is the defendant’s contention that the instant matter involves "international transportation” within the meaning of article 1, § 2 of the Warsaw Convention, the designated Statute of Limitations of two years outlined in article 29, § 1 therefore applies and as such this matter is time barred. However, the plaintiff maintains that the refusal of Brennan to accept the produce on June 21,1993, converted American’s status from that of a carrier to that of a warehouseman and, as such, the three-year Statute of Limitations for negligence under New York law should control. A careful review of the relevant provisions of the Convention is essential to assess which time frame governs.
*920 The Warsaw Convention is a multilateral treaty of the United States governing international air transportation. (49 USCA former § 1502, now § 40105.) It is well settled that as a treaty obligation of the United States, the Warsaw Convention is the supreme law of the land. (Chan v Korean Air Lines, 490 US 122 [1989].) Flight AA101 was undoubtedly an international flight within the parameters of the Warsaw Convention, as supplemented by the Montreal Agreement, which is a major international treaty governing the rights and liabilities of carriers in certain aspects of international air transportation. (Seguritan v Northwest Airlines, 86 AD2d 658 [2d Dept 1982], citing, inter alia, Kahn v Trans World Airlines, 82 AD2d 696 [2d Dept 1981].) Article 1, § 2 of the Convention defines international transportation as "any transportation in which, according to the contract made by the parties, the place of departure and the place of destination, whether or not there be a break in the transportation or a transshipment, are situated * * * within the territories of two High Contracting Parties”. Both Belgium and the United States are high contracting parties within the purview of article 38 of the Convention and as such they are signatories thereto. The United States has been a party to the Warsaw Convention since October 29, 1934. (US Dept of State, Treaties in Force, 291 [1992].) Belgium has been a party since October 11, 1936. When the flight is governed by the Convention " 'then the Convention has automatic full impact, by its own terms.’ ” (Egan v Kollsman Instrument Corp., 21 NY2d 160, 166 [1967].)
Belgian’s procedural argument against summary judgment is that American’s moving papers merely contain an affirmation of an attorney which is not based on personal facts and therefore the motion must be denied. It is well settled that an attorney’s affirmation based on documentation in his possession is sufficient on a motion for summary judgment. (Leandre v Sharperson, 96 AD2d 883 [2d Dept 1983].) The affirmation in support for summary judgment includes two exhibits: the aforementioned air waybill and accompanying delivery receipt and the affidavit of service of the summons and complaint herein. Thus, Belgian’s unpersuasive argument must fail.
The plaintiff at no time objects to the defendant’s contention that the produce was transported internationally or that the terms and conditions of the Convention applied at all times until Brennan refused to accept delivery of the goods on June 21, 1993. Therefore, it is undisputed that from June 18, 1993 until June 21,. 1993, the relevant terms and conditions of the *921 Convention applied. The application of the Warsaw Convention is determined solely by reference to its own provisions and the relevant contract of transportation. Generally the contract of transportation is evidenced by the air waybill. (Recumar Inc. v KLM Royal Dutch Airlines, 608 F Supp 795 [SD NY 1985].) Article 11, § 1 of the Convention states that "[t]he air waybill shall be prima facie evidence of the conclusion of the contract, of the receipt of the goods and of the conditions of transportation.” In section II, International Conditions of Contract 12 (c) of the air waybill it states: "any rights to damages against Carrier shall be extinguished unless an action is brought within two years from the date of arrival at the destination or from the date on which the aircraft ought to have arrived, or from the date on which the transportation stopped.” It is abundantly clear that the aforementioned air waybill defines the Statute of Limitations as two years.
With reference as to when the "transportation by air” ceases, the plain language of article 18 of the Convention defines the parameter at the airport’s border. (Victoria Sales Corp. v Emery Air Frgt., 917 F2d 705 [2d Cir 1990].) Consequently, it would appear that since the damage occurred either at some undefined point on the aircraft or at American’s facility located within the confines of JFK, the Convention would then apply and the action would be time barred. Nevertheless, Belgian’s position is that the refusal of the driver to accept the delivery of the produce after partial loading by American transformed American’s status from that of a carrier to that of a warehouseman, thereby invoking the three-year Statute of Limitations under State law asserting the applicability of the court’s ruling in Berman v Trans World Air (101 Misc 2d 511 [Civ Ct, NY County 1979]). In Berman baggage was completely released to passengers within the confines of the airport and a partial loss occurred when it was subsequently returned to the carrier’s employee to be placed on the conveyor belt.
Belgian further relies on 17 NY Jur 2d, Carriers, § 226, which states: "The liability of a common carrier as such for the loss of, or damage to, goods terminates upon the failure or refusal of the consignee to accept delivery thereof within the time stipulated in the contract of carriage, or within a reasonable time after notice of their arrival at the place of destination, or, where the consignee is not known or cannot be found, within a reasonable time after the arrival of such goods. Under such circumstances the carrier is deemed to have made a constructive delivery of the goods, and such liability as it may *922 be under thereafter in reference to the goods is that of a warehouseman.” This argument is misplaced. It is axiomatic that the facts and circumstances of each case should be carefully scrutinized by the trier of fact. It cannot be precisely determined when the damage occurred or if the goods were in fact stored properly in a cool area at American’s facility awaiting the driver’s return to accurately ascertain the reasonableness requirement of the aforementioned rule. It is the very question of when the damage was sustained which determines the applicable Statute of Limitations.
Article 18, § 3 of the Convention specifies that "[i]f * * * such transportation takes place in the performance of a contract for transportation by air, for the purpose of loading, delivery or transshipment, any damage is presumed, subject to proof to the contrary, to have been the result of an event which took place during the transportation by air.” Thus, there is a rebuttable presumption that the damage occurred while the parties were bound by the provisions of the Convention. Belgian has failed to come forth with any evidence to refute this presumption.
The affidavit of Franz Dahlem, the Liaison Officer for the plaintiff, is devoid of any personal knowledge whatsoever regarding the condition of the produce when it arrived at JFK on June 21, 1993, or when it was inspected by the USD A official a day later. Affixed to his affidavit is the aforementioned inspection certificate of June 22, 1993, yet it is impossible to decipher with any degree of reasonable certainty precisely when the damage occurred. The papers are also lacking an affidavit from the driver who may possibly have seen the condition of the goods on June 21, 1993 or June 22, 1993. One could only speculate that the damage occurred after the initial tender of delivery, assuming that Belgian’s reliance on the theory of American’s status as a warehouseman were correct. The court cannot give credence to this argument, however, since a one-day delay with the proper refrigeration would not violate the reasonableness standard. (17 NY Jur 2d, Carriers, § 226.) It is axiomatic that when a party has made a prima facie showing to entitle it to summary judgment, it is incumbent upon the opposing party to show by evidentiary facts that the defense is real and can be established at trial. (Indig v Finkelstein, 23 NY2d 728 [1968].) Further, conclusory allegations are insufficient to defeat a motion for summary judgment. (McGahee v Kennedy, 48 NY2d 832 [1979].) Accordingly, since Belgian has submitted no evidence to the contrary, the presumption in article 18 is controlling.
*923 CONCLUSION
The Warsaw Convention governs contracts of carriage between signatories for goods transported by "international air transportation.” The air waybill is the contract and the Statute of Limitations of two years defined therein is dispositive, unless it can be proven that the damage lid not occur during "international air transportation.” It is well settled that international air transportation ceases beyond the confines of the airport. In the instant case it is unclear if the damage occurred on board or at American’s facility between June 21, 1993 and June 22, 1993. If the one-day delay could be held as unreasonable under New York law, then American’s position would be altered from one of a carrier to one of a warehouseman, thus invoking a three-year Statute of Limitations. Nonetheless, there is insufficient evidence to accurately determine when the spoilage took place and Belgian has failed to provide evidentiary facts to assist this court so as to ascertain the exact time of spoilage. If there is a question as to damage the Convention presumes, subject to rebuttal evidence, that it occurred during "international air transportation.” Belgian failed to rebut this presumption and, as such, the two-year Statute of Limitations set forth in the Convention prevails. Since the damage occurred on or about June 19-22, 1993, and the summons and complaint was duly served approximately two years and two months later, on or about August 29, 1995, the instant action is time barred.
Accordingly, the defendant’s motion for summary judgment is granted in its entirety and the action is dismissed with prejudice. Further, in light of the foregoing, the plaintiffs cross motion for partial summary judgment dismissing the defendant’s second through seventh affirmative defenses premised on the Convention defenses is denied as academic.